UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY FRANKLIN,<br><br>                              Plaintiff,<br><br>v.<br><br>J. JIMENEZ, et al.,<br><br>                              Defendant. | Case No.:  11cv1240 JAH (BGS)<br><br>**REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON: (1) CROSS-MOTIONS FOR SUMMARY JUDGMENT RE: DENIAL OF PLAINTIFF'S SUMMARY JUDGMENT MOTION AND GRANT OF DEFENDANT'S SUMMARY JUDGMENT MOTION, and (2) DENIAL OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>**[ECF Nos. 43, 57 and 60.]** |

## I.     INTRODUCTION

Gregory A. Franklin ("Plaintiff"), a prisoner currently incarcerated at California State Prison, is proceeding *in pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and the Civil Rights Act, 42 U.S.C. § 1983.  In his Second Amended Complaint ("SAC"), Plaintiff alleges California Department of Corrections and Rehabilitation ("CDCR") officers Ramos and Hughey and nurses Garcia and Molina-Mata at Calipatria State Prison ("Calipatria"), violated his First, Eighth and Fourteenth Amendment rights in

retaliation for bringing a lawsuit by forcing him to use an upper bunk even though he had a swollen ankle and shoulder sling. (SAC at pp. 4-8.)   In his second cause of action, Plaintiff alleges retaliation by CDCR Officer Maciel who took a package containing denture adhesive, but never delivered it to Plaintiff.  *Id.* at 8-9.  Finally, in his third cause of action, Plaintiff alleges that CDCR Lieutenant Jimenez wrongly found him guilty of possessing a cell phone battery, which actually belonged to his cellmate, in retaliation for bringing grievances and suits against CDCR officers.  *Id.* at 10.

On March 18, 2016, Plaintiff filed a motion for summary judgment. (ECF No. 43.) After receiving two extensions, Defendant filed an opposition and cross-motion for summary judgment on August 5, 2016. (ECF No. 57.)  Plaintiff filed a response *nunc pro tunc* to August 24, 2016 requesting leave to amend the Second Amended Complaint. (ECF. No. 60.)  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation ("R&R").   For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and Defendants' cross-motion for summary judgment be **GRANTED.**

## II. STANDARD OF REVIEW

Summary judgment is appropriate when it is demonstrated that there exists no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);  Adickes v. SH. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). Thus, a motion for summary judgment under Fed. R. Civ. P. 56 addresses the sufficiency of the evidence, or of the law, to support the plaintiff's claims.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrates an absence of genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return the verdict for a non-moving party.  Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  Id.; Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan Fire & Marine, 210 F.3d at 1102.  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103.

The party opposing a properly supported motion for summary judgment "'may not rest upon mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008); (quoting Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003); Lindahl v. Air Fr., 930 F.2d 1434, 1437 (9th Cir. 1991).  Nevertheless, inferences are not drawn out of the air; rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.

11cv1240 JAH (BGS)

See Juell v. Forest Pharms., Inc., 456 F. Supp. 2d 1141, 1149 (E.D Cal. 2006); UMG Recordings, Inc. v. Sinnott Forest Pharms., Inc., 300 F. Supp 2d 993, 997 (E.D. Cal. 2004) (quoting Richards v. Nielsen Freight Lines, 602 F. Supp 1224, 1244-45 (E.D Cal. 1985), aff'd 810 F.2d 898 (9th Cir. 1987)).

"A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative." Anderson, 477 U.S. at 249; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  Similarly, self-serving declarations, uncorroborated by other testimony or other persuasive evidence, cannot create a genuine issue of fact sufficient to defeat summary judgment.  Villiarimo c. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

While a court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, a court is not required to examine the entire file for establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  After discovery, if the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

///
///
///
///
///
///

  
# III. PROFFERED EVIDENCE

## A. Defendants' Proffer

### 1.   Plaintiff's First Cause of Action: Retaliatory Assignment of Upper Bunk

Defendants argue Plaintiff's first cause of action against officers Ramos[1] and Hughey and nurses Garcia[2] and Molina-Mata for retaliation and deliberate indifference must fail because Plaintiff did not have a chrono permitting him to use a lower bunk on September 5, 2009 – the day Plaintiff was notified that he needed to relinquish the lower bunk in his cell to a newly transferred inmate who actually had a verifiable lower bunk chrono.  Accordingly, Defendants argue, they could not have been deliberately indifferent to an alleged medical need that was not documented and of which they were unaware. Similarly, Defendants argue there is no evidence of retaliation on their part because they did not take any adverse action against Plaintiff, they simply moved Plaintiff to the upper bunk in his cell based on the medical files they had.  In support of these arguments, Defendants Hughey, Molina-Mata, Maciel and Jimenez filed declarations and exhibits proffering the following evidence:

(1) On September 5, 2009, Officer Hughey was assigned as a Correctional Sergeant on Facility A at Calipatria State Prison (Hughey Decl. at ¶ 3.)

(2)  On September 5, 2009, Hughey became aware that an inmate named Rideau was issued a medical accommodation chrono mandating that he be housed on a lower bunk. (Hughey Decl. at ¶ 4.)

(3)  Each cell in the building can house two inmates in a lower and upper bunk, respectively.  (Hughey Decl. at ¶ 4.)

---

[1] Defendant informs the Court that the U.S. Marshal mailed service to the wrong S. Ramos at Calipatria State Prison.  The S. Ramos who was served is male, while the person Plaintiff has attempted to sue is a female officer.  However, there is no female officer named S. Ramos at Calipatria.  Therefore, the female S. Ramos remains unserved.  The currently served S. Ramos was not involved in the September 5, 2009 incident. [ECF No. 57-2 at 10:23-11:6; Ramos Decl ¶¶ 4-6.]

[2] Nurse Garcia has not been served in this action.  [ECF No. 57-2 at 6:16.]

(4)  Priority for lower bunks must be given to inmates with medical accommodation chromos.  (Hughey Decl. at ¶ 6.)

(5)  Medical accommodation chronos are forms issued by medical doctors to prescribe accommodations for inmates with a documented medical need; such as a cane, extra mattresses or lower bunk assignments.  (Molina-Mata Decl. at ¶ 4; Hughey Decl. at ¶ 7.)

(6)  Medical accommodation chronos can only be issued by doctors or physician's assistants.  (Molina-Mata Decl. at ¶ 5.)

(7) Nurse Molina-Mata did not have the authority to issue a medical accommodation chrono. (Molina-Mata Decl. at ¶ 11.)

(8) Officer Hughey did not have authority to issue or override a medical accommodation chrono. (Hughey Decl. ¶ 7.)

(9)  Officer Hughey checked the building's computer system to see if any lower bunks were available to house inmate Rideau.  (Hughey Decl. at ¶ 8.)

(10)     The building's computer system indicated Plaintiff did not have a cellmate, therefore, there was an available lower bunk in his cell to house inmate Rideau.  (Hughey Decl. at ¶8.)

(11)     When inmate Rideau moved to Plaintiff's cell, Plaintiff protested that he could not be housed on an upper bunk because of a medical condition. (Hughey Decl. at ¶ 9.)

(12)     Plaintiff could not produce a medical accommodation chrono to Officer Hughey to support his assertion that he could not be housed on an upper bunk. (Hughey Decl. at ¶ 9.)

(13)     On September 4, 2009, the day before the September 5th bunk re-assignment, Plaintiff had been examined and treated by a nurse named Ortiz for falling whiling running a week earlier.  Nurse Ortiz noted that Plaintiff's extremities and ankle appeared normal and that he had discomfort in his right shoulder when lifting over 90 degrees.  She gave him Naproxyn.  She did not refer Plaintiff to a

6

doctor, nor did she recommend a lower bunk accommodation.  (Molina-Mata Decl. ¶ 4; *see also* Encounter Form dated September 4, 2009 at ECF No. 57-5 at p. 6.)

(14)     Officer Hughey called the prison's medical facility to investigate Plaintiff's assertion that he had a medical accommodation chrono requiring him to use a lower bunk.  (Hughey Decl. at ¶ 9.)

(15)     Nurse Molina-Mata informed Officer Hughey that Plaintiff did not have a lower bunk chrono on September 5, 2009.  (Hughey Decl. at ¶ 9; Molina-Mata Decl. at ¶ 10.)

(16)     A Comprehensive Accommodation Chrono attached to the declaration of Nurse Molina indicates Plaintiff had a temporary knee brace accommodation, two years earlier on December 12, 2007, but no lower bunk chrono as of September 5, 2009. (Molina-Mata Decl. at ECF No. 57-5, p. 8.)

(17)     A chrono dated March 30, 2009, also attached to the declaration of Nurse Molina, indicates Plaintiff had a temporary chrono to wear prescription eyeglasses. {Molina-Mata Decl. at ECF No. 57-5, p. 9.)

(18)     Plaintiff did not have a lower bunk chrono on September 5, 2009, therefore Officer Hughey assigned inmate Rideau to be housed on the lower bunk in Plaintiff's cell and Plaintiff to be housed on the upper bunk. (Hughey Decl. at ¶¶ 8-9.)

(19)     Plaintiff later reported falling off the upper bunk on September 5, 2009 and Nurse Molina-Mata examined and treated Plaintiff in the A-yard medical clinic.  (Molina-Mata Decl. at ¶ 6 and Exh. D to ECF No. 57-5; Hughey Decl. at ¶ 11.)

(20)     After his fall from the upper bunk, Nurse Molina-Mata noted Plaintiff was alert and oriented and reported shoulder pain, left ankle pain, and pain to the back of his head, so Molina-Mata referred Plaintiff to the prison's medical clinic (Treatment Triage Area) for further evaluation and treatment by staff.  (Molina-Mata Decl. at ¶ 6; *see also* Interdisciplinary Progress Notes dated September 5, 2009 at ECF No. 57-5 at pp. 12-15.)

(21)     Nurse Molina-Mata only examined and treated Plaintiff on September

5, 2009.  She was not present or involved in medical treatment Plaintiff received from Nurse Ortiz on September 4, 2009.  (Molina-Mata Decl. at ¶ 3, 8.)

(22)    Officer Hughey did not witness Plaintiff's fall from the upper bunk on September 5, 2009 and was not involved in his medical treatment. (Hughey Decl. at ¶ 11.)

(23)    A Comprehensive Accommodation Chrono attached to the declaration of Nurse Molina indicates that approximately one year later, on or about September 16, 2010, Plaintiff was given a temporary knee brace accommodation which also included a temporary lower bunk chrono. (Molina-Mata Decl. at ECF No. 57-5, p. 10.)

### 2. Plaintiff's Second Cause of Action:  Retaliatory Delay In Shipment of Quarterly Package

Defendants argue Plaintiff's second cause of action against Officer Maciel  in violation of his First, Eighth and Fourteenth Amendment rights for failure to deliver a quarterly package containing dental adhesive in 2007 must fail because under the prison's privilege group rules, Plaintiff was not eligible to receive packages during the time period in question.  When Plaintiff regained eligibility, he received a replacement package.  In support of these arguments, Defendants proffered the following evidence:

(24)     Maciel was a Receiving and Release package officer on the A-yard where Plaintiff was housed in late 2007.  (Maciel Decl. at ¶ 4.)

(25)    Inmates who are in the C-status privilege group are not eligible to receive quarterly packages.   (Maciel Decl. at ¶¶ 5-6.)

(26)    Inmates are placed on C-status by an Institutional Classification Committee and Receiving and Release Officers have no control over an inmate's privilege group. (Maciel Decl. at ¶ 6.)

(27)    Plaintiff was on C-status from September 18, 2007 to October 16, 2007. (Maciel Decl. at ¶ 7.)

(28)    A quarterly package for Plaintiff arrived at Calipatria State Prison on

September 19, 2007. (Maciel Decl. at ¶ 8.)

(29)     When quarterly packages arrive for inmates who are ineligible to receive them, they are shipped back to the vendor. (Maciel Decl. at ¶ 9, Exh. B to ECF No. 57-4.)

(30)     Officer Maciel is not responsible for the mailing of return packages. He only distributed and returned packages to and from the A-yard to the prison mail room. (Maciel Decl. at ¶ 10.)

(31)     Officer Maciel completed an unauthorized package form due to Plaintiff's inability to receive the September 19, 2007 quarterly package and provided a copy of the form to Plaintiff on October 14, 2007. (Maciel Decl. at ¶ 11; see also Unauthorized Package Form at ECF No. 57-4, p. 14.)

(32)     A replacement package was sent to Plaintiff on November 17, 2007 after Plaintiff was taken off C-status.  (Maciel Decl. at ¶¶12-16.)

(33)     Officer Maciel has no authority to deliver packages to inmates on C-status regardless of what is inside the package.  (Maciel Decl. at ¶¶17-18.)

### 3.  Plaintiff's Third Cause of Action: Retaliatory Rules Violation Finding of Guilty

Defendants argue Plaintiff's third cause of action, which alleges Lieutenant Jimenez violated Plaintiff's First and Fourteenth Amendment rights by finding him guilty of a prison rules violation without evidence, must fail because some evidence supported the finding, which was made after a full hearing.  In support of these arguments, Defendants proffered the following evidence:

(34)     Jimenez is a Correctional Lieutenant at Calipatria.  As part of his duties, he acts as a Senior Hearing Officer for rules violation report hearings.  A rules violation report is a disciplinary report that is issued to an inmate who is accused of violating prison rules or the law. A Senior Hearing Officer is an impartial decision maker who conducts the hearing, reviews the evidence and renders a decision and assesses corrective action where appropriate. (Jimenez Decl. at ¶¶3-5.)

(35)     On November 24, 2009 Jimenez served as the Senior Hearing Officer for a rules violation report involving Plaintiff, which charged him with possession of a cell phone battery on November 16, 2009.  (Jimenez Decl. at ¶6.)

(36)     Plaintiff was present in person for the November 24, 2009 hearing. He read the rules violation report aloud at the hearing and stated that he understood it. Plaintiff entered a plea of not guilty and gave a statement in his defense.   He received all documents more than twenty-four hours before the hearing. Plaintiff also presented and questioned inmate Rideau as his witness. (Jimenez Decl. at ¶¶10-11; *see also* Rules Violation Report dated November 18, 2009 at ECF No 57-3 at pp. 6-10.)

(37)     At the hearing, Jimenez also considered the written statements of Officer Landeros, who wrote the rules violation report against Plaintiff. (Jimenez Decl. at ¶12.)

(38)     Jimenez was not involved in the cell search or discovery of the cell phone battery.  After conducting the hearing, he added his findings to the rules violation report.  (Jimenez Decl. at ¶6-8, Exh. A to 57-3 at pp. 7-8.)

(39)     Jimenez found Officer Landeros's testimony concerning the layout of inmate prison cells and her search for contraband to be more credible than Plaintiff's denial of contraband possession or Inmate Rideau's testimony. (Jimenez Decl. at ¶¶13-15.)

**B. Plaintiff's Proffer**

In the SAC and the motion for summary judgment, Plaintiff contends: 1) officers Ramos and Hughey and nurses Garcia and Molina-Mata violated his First, Eighth and Fourteenth Amendment rights in retaliation for bringing lawsuits by forcing him to use an upper bunk even though he had a swollen ankle and shoulder sling; 2) Officer Maciel took a quarterly package containing denture adhesive, but never delivered it to Plaintiff in retaliation for bringing suits against CDCR officers; and 3) Lieutenant Jimenez wrongly found him guilty of possessing a cell phone battery, which actually belonged to his cellmate, in retaliation for bringing suits against CDCR officers.  In conjunction with his

motion for summary judgment, Plaintiff also filed an affidavit (ECF No. 43 at pp. 31-40), signed under penalty of perjury, and supporting exhibits proffering the following evidence:

### 1.  Plaintiff's First Cause of Action:  Retaliatory Assignment of Upper Bunk

(1)  Plaintiff submitted a Health Care Services Request Form dated August 21, 2009 and completed by Nurse Stepp indicating that he reported pain to the right shoulder and requested a low bunk chrono.  The August 21, 2009 form also includes a note indicating Plaintiff "needs MD visit for eval prior to chrono." [ECF No. 43 at p. 137.]

(2)  Plaintiff submitted a Health Care Services Request Form dated September 4, 2009 and completed by Nurse Ortiz indicating Plaintiff reported twisting his left ankle and re-injuring his shoulder in a fall.

(3) Plaintiff states in his declaration that on September 5, 2009, Officer Ramos demanded he take the top bunk in his cell.  Plaintiff told Officer Ramos that he had been to medical on the previous day – September 4, 2009, and could not take the top bunk; however, Ramos insisted Plaintiff use the top bunk.  Plaintiff tried to climb up, but hit his head and feel to the floor.  [ECF No. 43 at pp. 31-32.]

(4)  After falling to the floor, Plaintiff was taken to medical where Nurse Garcia made a t-shirt sling for Plaintiff's arm and told him that while she did not have the authority to issue a lower bunk, she would put him on the doctor's list so he could make a request for a lower bunk chrono. [ECF No. 43 at p. 32.]

(5) Plaintiff submitted an Interdisciplinary Progress Note signed by Nurse Molina documenting Plaintiff's fall from an upper bunk on September 5, 2009 and stating "no visible injuries seen….verbalized pain to right shoulder and back of head also left ankle…. Medical transport for further eval."  [ECF No. 43 at pp. 134-135.]

(6) After leaving medical on September 5, 2009, the guards made Plaintiff walk back to his cell despite his swollen foot.  Officer Hughey told Plaintiff that he could use the top bunk or "go to the hole (administrative segregated housing) and still

be on a top bunk." [ECF No. 43 at p. 33.]

(7)  Similarly, Officer Ramos told Plaintiff, "I don't want to see you on the bottom bunk if you get on the bottom bunk you are going to the hole." [ECF No. 43 at p. 33-34.]

(8)  Inmate Rideau submitted a declaration in support of Plaintiff's motion for summary judgment stating that "there were other cells I could have been forced to move into; approximately about 10 other cells in the building with guys not having bottom bunk chronos." [ECF No. 43 at p. 131.]

(9)  Plaintiff stayed on an upper bunk for twelve days until he was seen by a physician and given a lower bunk chrono. [ECF No. 43 at p. 34.]

(10)  Plaintiff submitted a Comprehensive Accommodation Chrono dated November 19, 2010 that indicates he now has a permanent bottom bunk accommodation. [ECF No. 43 at p. 138.]

(11)  Plaintiff submitted an operative report dated May 24, 2011, indicating that two years later, he had surgery on his shoulder on or about May 17, 2011. {ECF No. 43 at pp. 123-125.]

**2.  Plaintiff's Second Cause of Action – Retaliatory Delay In Shipment of Quarterly Package**

(12)  Plaintiff submitted a September 17, 2007 invoice from Access Securepak addressed to him indicating a shipment of Stay Dent Denture Adhesive was ordered for him, along with other sundries and foodstuffs. [ECF No. 43 at pp. 98-99.]

(13)  Sometime in October of 2007, Officer Maciel told Plaintiff that he got his quarterly package and sent it back and "will keep sending it back where you would not receive [it] until months later." [ECF No. 43 at p. 31.]

(14)  Plaintiff submitted a 602 form dated October 10, 2007, which requests "Mr. Franklin package [be] given to him immediately and an explanation for the delay." The informal level response to the request, dated October 15, 2007 reads:

"Granted – Franklin - I show I received it and delivered it to a yard – from there I can't explain it – it will be replaced within the following week & noted as 3rd quarter. Sorry for the delay." [ECF No. 43 at pp. 100-101.]

(15)    Plaintiff submitted a Calipatria State Prison Receiving and Release Unauthorized Package Form dated October 14, 2007 stating: "Your item/package is being returned to send for the following reasons(s):  C-status privilege group cannot receive." [ECF No. 43 at p. 110.]

(16)    Plaintiff submitted a 602 form dated October 18, 2007, in which Plaintiff writes that he was told he could not receive his package "because he was on C-status"; however he was not informed that his package had arrived and was not given his package despite the fact that it had denture adhesive needed to alleviate dentures from cutting his gums. [ECF No. 43 at pp. 105-108.]

(17)    Plaintiff's October 18, 2007, 602 form also raised Plaintiff's objection that the package should not have been sent back, but temporarily withheld until Plaintiff was no longer on C-status due to his need for the denture adhesive. Plaintiff also objected that he did not have an opportunity to appeal the decision to return his package to the sender.  [ECF No. 43 at pp. 106-108.]

(18)    Plaintiff submitted an informal response to Plaintiff's 602 appeal form dated November 5, 2007 from officer Maciel denying the appeal and stating: "Your package was returned on October 14, 2007.  Access Catalog Co. verified that your 3rd quarter package arrived at Calipatria on September 19, 2007, by which time you had already been placed on 'C' status, making you ineligible to receive the package.  Operational Procedures 3004 states, 'the arrival date of a package shall be the basis for the eligibility determination.'  Since you remained on 'C' status until the end of the 3rd quarter, you missed the deadline to receive a package for that quarter; however, you are now eligible to receive a 4th Quarter package.  For future reference, exceptions to issue a package are not made based on the contents of a package, i.e. dental adhesive, regardless of the privilege

group." [ECF No. 43 at p. 109.]

**3. Plaintiff's Third Cause of Action:  Retaliatory Rules Violation Finding of Guilty**

(19)      On November 16, 2009, Officer Landeros stopped plaintiff and his cellmate, inmate Rideau to tell them she had found a cell phone battery in their cell.  Inmate Rideau immediately told Officer Landeros that the cell phone battery she found in the cell search belonged to him, not Plaintiff. [ECF No. 43 at p. 34.]

(20)      Plaintiff submitted a Rules Violation Report dated November 16, 200, documenting Officer Landeros's random cell search and discovery of a Black Samsung Cell Phone Battery in a brown paper bag in the lower locker.  [ECF No. 43 at 140-141.]

(21)      A disciplinary hearing concerning the discovery of the cell phone battery was held on November 24, 2009.  At that hearing, Inmate Rideau told hearing officer Lieutenant Jimenez that Plaintiff had no knowledge of the battery. Nevertheless, Lieutenant Jimenez told Plaintiff he would find him guilty because "he know [Plaintiff] like to sued [sic] and he don't want [Plaintiff] to sued [sic] him, with a smirk on his face." [ECF No. 43 at p. 35.]

(22)      Plaintiff submitted a Rules Violation Report summary of the November 24, 2009 hearing disciplinary hearing indicating Plaintiff received a copy of the Rules Violation Report in advance of the hearing, Inmate Rideau testified at the hearing that Plaintiff had no knowledge of the battery and that Plaintiff was found guilty of having a contraband cell phone battery. [ECF No. 43 at p. 143-146.]

(23)      Plaintiff submitted a Director's Level Appeal Decision dated September 30, 2010, indicating Plaintiff's second and third level appeals of the guilty decision were denied with the remark that the battery was found in an area of the cell readily accessible to both inmates.  [ECF No. 43 at p. 147.]

///

///

# IV. DISCUSSION

**A.**   **Plaintiff's First Cause of Action Against Defendants Hughey and Molina Under The First and Eighth Amendments re: Lower Bunk Assignment**

### 1.  First Amendment - Retaliation

#### a.  Party Arguments

As to Plaintiff's retaliation claim under the First Amendment, Defendants Hughey and Molina-Mata argue they did not take any adverse action against Plaintiff because neither of them had authority to: (1) issue a lower bunk chrono for Plaintiff, or (2) to override the lower bunk chrono given to Plaintiff's new cell mate. [ECF No. 57-2 at 14:15-21.]  Defendants also argue there was no causation or retaliatory link between the alleged retaliatory switch from a lower bunk to an upper bunk and the alleged protected conduct (the filing of lawsuits against CDCR officers in general) because Defendants were simply following prison housing policy.  *Id.*

Plaintiff argues Defendants targeted him for a move from a lower bunk to an upper bunk assignment on September 5, 2009, because of a complaint he brought against 13 officers at Calipatria State Prison in July of 2007. [ECF No. 43 at pp. 35-36.]  Plaintiff states in his affidavit that nurse Molina was "cordial [but] once 13 defendants were served with summons from me that they were being sued by me, nurse Molina was very rude." [ECF No. 43 at p. 36.]  Plaintiff also states in his affidavit that Officer Hughey told him either "I get up on the top bunk or I go to the hole (administrative segregated housing) and still be on a top bunk."  [ECF No. 43 at p. 33.]

#### b. Standard of Review

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate, (2) because of, (3) that inmate's protected conduct, and that action (4) chilled the inmate's exercise of his First Amendment Rights, and (5) the action did not reasonably advance a legitimate correctional goal.  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005.)

The plaintiff must submit evidence that links the alleged retaliation with the exercise of a First Amendment right.  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995.) More specifically, the plaintiff must show the exercise of the First Amendment right was the substantial or motivating factor behind the defendant's conduct.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Raising a genuine issue of material fact as to retaliatory motive requires the plaintiff to produce "in addition to evidence that the defendant knew of the protected speech, at least: (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was false or pretextual." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 771 n.21 (9th Cir. 2006).

### c.  Discussion

Here, Plaintiff has not proffered evidence demonstrating an adverse action. Defendant Hughey has put forth evidence that the addition of a cellmate to Plaintiff's cell and his subsequent direction for Plaintiff to take an upper bunk were not conducted in retaliation, but as a part of Defendant Hughey's duty to find inmate Rideau a cell with a lower bunk because Rideau had a valid lower bunk chrono. As previously stated in the Court's review of the facts, on September 5, 2009, Officer Hughey became aware that Rideau was issued a medical accommodation chrono mandating he be housed on a lower bunk. Each cell in Facility A can hold two inmates in a lower and upper bunk. The building's computer system indicated Plaintiff did not have a cellmate, therefore, there was an available lower bunk in Plaintiff's cell in which to house inmate Rideau.  Priority for lower bunks must be given to inmates with medical accommodation chromos like inmate Rideau.  Plaintiff, however, could not at the time, and still has not produced a medical accommodation chrono showing his entitlement to a lower bunk on September 5, 2009.  Because medical accommodation chronos are only issued by medical doctors to prescribe accommodations for inmates with a documented medical need, Officer Hughey had no authority to override Rideau's chrono in favor of Plaintiff's desire to remain on a lower bunk.  Nurse Molina also had no authority to require that Plaintiff remain on a

lower bunk despite Rideau's chrono because she is not a physician.

Plaintiff has also failed to provide evidence demonstrating causation or a link between the bunk reassignment in September 2009 and the complaint he filed two years earlier - in July 2007- against various unidentified Calipatria officers.  Specifically, the plaintiff's speech (or 2007 complaint) must be the motivating factor behind the retaliatory conduct.  Pratt, 65 F.3d at 807.  The Ninth Circuit has held that raising a genuine issue of material fact as to retaliatory motive requires the plaintiff to prove evidence of proximity between the speech and retaliation, opposition to the speech and a pretextual reason for the retaliatory conduct.  Pinard, 467 F.3d at 771 n.21.  Proximity in time between the exercise of the First Amendment right and the alleged retaliation can serve as evidence that the adverse action constituted retaliatory conduct.  However, in this case, two years passed between the service of Plaintiff's complaint in July of 2007 and the bunk reassignment on September 5, 2009.  This fact weighs against the demonstration of a causal link.

Evidence that Defendant expressed opposition to the speech may demonstrate a link between the exercise of Plaintiff's First Amendment right and the alleged retaliation. Plaintiff has stated that after his complaint was served, Nurse Molina was rude to him. However, Plaintiff provides no evidence that Nurse Molina's change in demeanor was connected to the service of his complaint. Plaintiff has also stated that Officer Hughey told him he could either take the top bunk in his cell or the top bunk in the administrative segregation unit.  Again, while Officer Hughey's interaction with Plaintiff may have been rude, it does not show a connection, opposition, or even a mention of the service of Plaintiff's complaint two years earlier in 2007.  These facts also weigh against the demonstration of a causal link.

Finally, evidence that a defendant's proffered reason for adverse action was false or pretextual may demonstrate a link between the alleged relation and exercise of Plaintiff's First Amendment right.  But, as previously stated above, Defendants have presented evidence that: (1) inmates with medical accommodation chronos have lower bunk preference; (2) Plaintiff did not have a medical accommodation chrono for a lower

bunk on September 5, 2009; and (3) medical accommodation chronos are only issued by medical doctors.  This evidence demonstrates Defendants Hughey and Molina had a legitimate correctional purpose in switching Plaintiff's bunk assignment upon the arrival of inmate Rideau.  Accordingly, **IT IS RECOMMENDED** that the Court **GRANT** Defendants' motion for summary judgment as to Plaintiff's retaliation claim under the First Amendment.

### 2.  **Eighth Amendment Deliberate Indifference re: Lower Bunk Assignment**

#### a.  **Party Arguments**

As to Plaintiff's deliberate indifference claim under the Eighth Amendment, Defendants Hughey and Molina-Mata argue they were not deliberately indifferent because Plaintiff did not have a medical accommodation chrono from a medical doctor guaranteeing him a lower bunk as a result of his injured shoulder and ankle. [ECF No. 57-2 at 12:11-16.]  Therefore, they did not consciously disregard a risk to Plaintiff's health.  *Id.* at 12:24-27; 13:8-16.  Hughey argues additionally, that the facts show he took steps to investigate Plaintiff's assertion that a chrono existed, the antithesis of disregard.  Nurse Molina notes that she did not give care to Plaintiff.  She simply reported the contents of his file and had no authority as a nurse to mandate Plaintiff be given a lower bunk despite his cellmate's valid lower bunk chrono.  *Id.*

Plaintiff argues his arm sling and visibly swollen foot demonstrated his need for a lower bunk and deliberate indifference is demonstrated by the officers' conduct in making him walk back more than 200 yards to his cell with a sling and swollen ankle after he had fallen from the upper bunk.  [ECF No. 43 at pp. 32-33.]

#### b.  **Standard of Review**

The Eighth Amendment prohibits both the imposition of cruel and unusual punishment and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Conditions of confinement claims require extreme deprivations that are sufficiently grave to deny the minimal civilized measure of life's necessities. Hudson v. McMillian, 503 U.S. 1, 9 (1992).  "An Eighth Amendment claim

that a prison official has deprived [prisoners] of humane conditions of confinement must meet two requirements, one objective and one subjective." Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The prisoner must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." Foster v. Runnels, 554 F.3d 807, 812 (9th Cir.2009) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Under the objective requirement, conditions of confinement must pose a substantial risk of sufficiently serious harm. Farmer, 511 U.S. at 834. The conditions of a prison may be restrictive and harsh, but officials have the duty to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). The Court may consider the circumstances, nature, and duration of the deprivation to determine whether the risk of harm is sufficiently serious. Lewis, 217 F.3d at 731.

The subjective requirement, relating to defendant's state of mind, requires "deliberate indifference." Id. In the context of a prisoner's medical needs, the determination of "deliberate indifference" requires an examination of two elements: (1) the seriousness of the prisoner's medical needs and (2) the nature of the defendant's response. See McGuckin v. Smith, *974* F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by WMX Techs., Inc. v Miller, 104 F3d 1133 (9th Cir. 1997)).

### c. **Discussion**

In order to survive a motion for summary judgment on an Eighth Amendment claim, plaintiff must demonstrate a triable issue of material fact as to whether he has objectively been deprived of a necessity of life. As for the subjective prong of an Eighth Amendment inquiry, plaintiff must show there is a triable issue of material fact as to the Defendants' states of mind, i.e. whether Officer Hughey and Nurse Molina were deliberately indifferent to Plaintiff's need for an upper bunk.

The evidence demonstrates that the day before the September 5th bunk re-assignment, Plaintiff had been examined and treated by a nurse named Ortiz for falling

while running a week earlier.  Nurse Ortiz noted Plaintiff's extremities and ankle appeared normal and that he had discomfort in his right shoulder when lifting over 90 degrees.  She gave him Naproxyn.  She did not refer Plaintiff to a doctor, nor did she recommend a lower bunk accommodation. When Plaintiff could not produce a chrono entitling him to a lower bunk, Officer Hughey called the prison's medical facility to investigate.  Nurse Molina-Mata informed Hughey when he called that Plaintiff did not have a lower bunk chrono as of September 5, 2009.  Thus, Defendant's actions do not demonstrate knowledge of a serious or excessive health risk because despite Plaintiff's fall on the previous day there was no chrono authorizing lower bunk preference.  These facts also do not establish disregard; not only because one cannot disregard a risk of which he is unaware, but also because Hughey investigated Plaintiff's entitlement to a lower bunk and Nurse Molina looked through the records in response to Hughey's request for confirmation, but found no chrono.  No triable issue of material fact exists as to the objective or subjective components of Plaintiff's claim.  Accordingly, **IT IS RECOMMENDED** that the Court **GRANT** Defendants Hughey and Molina's motion for summary judgment on Plaintiff's Eighth Amendment claim.

### B. Plaintiff's Second Cause of Action : Claims Against Officer Maciel Under The First, Eighth and Fourteenth Amendments

#### 1. Party Arguments

First, Defendants argue Officer Maciel's failure to deliver the package in violation of the First Amendment could not constitute retaliation because when the package arrived, Plaintiff was ineligible to receive it due to his placement on C-Status. Next, Defendants argue Plaintiff's deliberate indifference claim under the Eighth Amendment must fail because the ability to receive a quarterly package is determined by the inmate's privilege group, not the contents of the package.  Therefore, Officer Maciel argues, the fact that the package contained denture cream had no effect on Plaintiff's eligibility to receive it or his authority to deliver it.  Lastly, Defendants argue the availability of a state tort action to Plaintiff precludes relief under the Fourteenth Amendment because Plaintiff

has an adequate post-deprivation remedy for the loss of an inmate's property. [ECF No. 57-2 at pp. 16-20.]

Plaintiff argues the package should not have been sent back, but temporarily withheld until Plaintiff was no longer on C-status due to his need for the denture adhesive. Plaintiff also objects that he did not have an opportunity to appeal the return of his package to the sender. [ECF No. 43 at pp. 106-108.]

### 2. First Amendment Retaliation

As the Court discussed in Section A(1) above, a viable claim of First Amendment retaliation contains five elements: (1) an assertion that a state actor took adverse action against an inmate, (2) because of, (3) that inmate's protected conduct, and that action (4) chilled the inmate's exercise of his First Amendment Rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005.) The plaintiff must submit evidence that links the alleged retaliation with the exercise of a First Amendment right. Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995.) More specifically, the plaintiff must show the exercise of the First Amendment right was the substantial or motivating factor behind the defendant's conduct. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

Defendant Maciel has provided evidence demonstrating inmates who are in the C-status privilege group are not eligible to receive quarterly packages. Officers have no control over an inmate's privilege group because inmates are placed on C-status by an Institutional Classification Committee. Plaintiff was on C-status from September 18, 2007 to October 16, 2007. A quarterly package for Plaintiff arrived at Calipatria State Prison on September 19, 2007, a day after Plaintiff was placed on C-status. When quarterly packages arrive for inmates who are ineligible to receive them, they are shipped back to the vendor. Officer Maciel was not responsible for the mailing of return packages and only distributed and returned packages to and from the A-yard to the prison mail room. Officer Maciel completed an unauthorized package form due to Plaintiff's inability to receive the September 19, 2007 quarterly package and provided a copy of the form to

Plaintiff on October 14, 2007. Although Officer Maciel told Plaintiff he would "keep sending [the package] back where you would not receive [it] until months later," a replacement package was sent to Plaintiff on November 17, 2007, at a time when Plaintiff was taken off C-status. Accordingly, Plaintiff has not submitted evidence showing elements two and five, namely that retaliation for the filing of Plaintiff's July 2007 complaint – not Plaintiff's C-status - was a substantial motivating factor causing Officer Maciel to fail to deliver the quarterly package to Plaintiff in October of 2007. Accordingly, **IT IS RECOMMENDED** that the Court **GRANT** Defendant Maciel's motion for summary judgment on Plaintiff's First Amendment claim.

### 3. <u>Eighth Amendment Deliberate Indifference</u>

As the Court explained in Section A(2) above, "An Eighth Amendment claim that a prison official has deprived [prisoners] of humane conditions of confinement must meet two requirements, one objective and one subjective." <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087 (9th Cir. 1994) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). The prisoner must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." <u>Foster v. Runnels</u>, 554 F.3d 807, 812 (9th Cir.2009) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). Under the objective requirement, the Court may consider the circumstances, nature, and duration of the deprivation to determine whether the risk of harm is sufficiently serious. <u>Lewis</u>, 217 F.3d at 731.  The subjective requirement, relating to defendant's state of mind, requires "deliberate indifference." <u>Id.</u> In the context of a prisoner's medical needs, the determination of "deliberate indifference" requires an examination of two elements: (1) the seriousness of the prisoner's medical needs and (2) the nature of the defendant's response.  See <u>McGuckin v. Smith</u>, *974* F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by <u>WMX Techs., Inc. v Miller</u>, 104 F3d 1133 (9th Cir. 1997)).

Plaintiff has failed to show serious deprivation under the objective requirement because the evidence indicates a replacement package was sent to Plaintiff only one

month later, on November 17, 2007, when Plaintiff was taken off of C-status. This same evidence also fails to show the presence of subjective deliberate indifference on the part of Maciel because despite Maciel's alleged October 2007 comment that he would continue withholding the package, Plaintiff, nevertheless, received his package in November 2007 after he was taken off of C-status.  Accordingly, **IT IS RECOMMENDED** that the Court **GRANT** Defendant Maciel's motion for summary judgment on Plaintiff's Eighth Amendment claim.

### 4. <u>Fourteenth Amendment Due Process Claim</u>

#### a.  **Standard of Review**

The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary government action by prohibiting states from depriving people of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or property interest, (3) by officials acting under color of state law. <u>Parratt v. Taylor</u>, 451 U.S. 527, 536–37 (1981).

To prevail on a claim of deprivation of liberty or property without due process of law, a plaintiff must first establish the existence of a protected liberty or property interest. After meeting this threshold requirement, the plaintiff must then demonstrate that the defendants failed to provide the process due. <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, at 556–57 (1974); <u>Serrano v. Francis</u>, 345 F.3d 1071, at 1078 (9th Cir. 2003).

However, a temporary deprivation of personal property does not constitute a violation of a prisoner's due process rights unless Plaintiff can show the deprivation imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," causing actual harm to the inmate.  <u>Sandin v. Conner</u>, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Where a prisoner alleges the deprivation of a liberty or property interest in the violation of the Fourteenth Amendment, caused by the unauthorized negligent or intentional action of a prison official, the prisoner cannot state a constitutional claim

where the state provides an adequate post-deprivation remedy under the Parratt-Hudson Doctrine.  See Parratt v. Taylor, 451 U.S. 527, 359 (1981) (holding that a negligent deprivation of a prison inmate's property by state officials does not violate the Fourteenth Amendment's Due Process Clause if an adequate post remedy exists); see also Hudson v. Palmer, 468 U.S. at 533 (1983) (extending Parratt rule to intentional deprivation); see also Barnett v. Centoni, 31 F.3d 813, 816-17 (per curiam) (9th Cir. 1994) (finding that prisoner had failed to state a due process claim for deprivation of property because "California law provides an adequate post-deprivation remedy for any property deprivations.  See Cal. Gov't Code § § 810-895.").

The Ninth Circuit has held that California law provides an adequate post-deprivation remedy for property deprivations caused by public officials.  Barnett v. Centoni, 31 F.3d 813, 816 (per curiam) (9th Cir. 1994); see Cal. Gov't Code §§810-895 (West 2013).  Under California Government Code §§ 810 et seq., California permits prisoners to seek a post deprivation state judicial remedy for any property deprivations.  Cal. Gov't Code §§810-895 (West 2013). It is the existence of the alternative remedies that bars Plaintiff from pursuing a §1983 procedural due process claim, not whether Plaintiff attempted or even succeeded in redressing his loss through the available state remedy process.  Willoughby v. Lewis, 717 F.Supp. 1439, 1443 (D. Nev. 1989).

**b.  Discussion**

There is no evidence that Plaintiff pursued the state law remedy available to him under California Government Code § § 810 et seq. before asserting his constitutional claim. Therefore, as a matter of law, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment Claim.  In addition, Plaintiff has not provided evidence that the deprivation he experienced was of such constitutional magnitude that a material issue of fact exists.  Although prisoners have a protected property interest in their personal property, authorized property deprivations are permissible if conducted pursuant to a regulation that is reasonably related to a legitimate penological interest.  See Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974); Turner v. Safley, 482 U.S. 78, 89, 107

(1987).

The undisputed facts show Plaintiff was on C-status from September 18, 2007 to October 16, 2007. A quarterly package for Plaintiff arrived at Calipatria State Prison on September 19, 2007 – while he was classified under C-status and ineligible to receive it. When quarterly packages arrive for inmates who are ineligible to receive them, they are shipped back to the vendor. Officer Maciel completed an unauthorized package form due to Plaintiff's inability to receive the September 19, 2007 quarterly package and provided a copy of the form to Plaintiff on October 14, 2007. A replacement package was sent to Plaintiff on November 17, 2007 after Plaintiff was taken off C-status. Thus, the evidence demonstrates the deprivation resulting from the return to sender and subsequent re-shipment of Plaintiff's quarterly package constituted a temporary deprivation of personal property, which is not a cognizable due process violation. See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (no due process violation where an inmate's property was taken in connection with his reclassification to a status in which he was not authorized to possess the additional property); Choun v. Woodford, No. C 03 3219 SI, 2005 WL 1910930, at *6-9 (N.D. Cal. Aug. 10, 2005) (concluding that the temporary deprivation of personal property did not violate the prisoner's due process rights); Owens v. Ayers, No. C 01 3720 SI (PR), 2002 WL 73226, at *2 (N.D. Cal. Jan. 15, 2002).  Accordingly, **IT IS RECOMMENDED** that this Court **GRANT** Defendant Maciel's motion for summary judgment on the Plaintiff's Fourteenth Amendment claim.

## C. <u>Plaintiff's Third Cause of Action: Claims Against Lieutenant Jimenez Under The First and Fourteenth Amendments</u>

### 1. Party Arguments

Defendant argues Lieutenant Jimenez, who presided over Plaintiff's rule violation hearing, did not violate the First or Fourteenth Amendment because Plaintiff was given a full hearing and there was some evidence to support Jimenez's guilty finding.  [ECF No. 57-2 20:11-14.]

Plaintiff argues Lieutenant Jimenez found him guilty of possessing a cell phone

battery in retaliation for bringing suits against CDCR officers because his cellmate testified that Plaintiff had no knowledge of the battery at the rules violation hearing and Lieutenant Jimenez told Plaintiff that: "he know [Plaintiff] like to sued [sic] and he don't want [Plaintiff] to sued [sic] him, with a smirk on his face." [ECF No. 43 at p. 35.]

### a. <u>First Amendment Retaliation</u>

As explained previously, a viable claim of First Amendment retaliation contains five elements: (1) an assertion that a state actor took adverse action against an inmate, (2) because of, (3) that inmate's protected conduct, and that action (4) chilled the inmate's exercise of his First Amendment Rights, and (5) the action did not reasonably advance a legitimate correctional goal. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005.) The plaintiff must submit evidence that links the alleged retaliation with the exercise of a First Amendment right. <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995.) Specifically, the plaintiff must show the exercise of the First Amendment right was the substantial or motivating factor behind the defendant's conduct. <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989).

The Ninth Circuit has held that raising a genuine issue of material fact as to retaliatory motive requires the plaintiff to prove evidence of proximity between the speech and retaliation, opposition to the speech and a pretextual reason for the retaliatory conduct. <u>Pinard</u>, 467 F.3d at 771 n.21. However, Plaintiff has failed to show Defendant Lieutenant Jimenez's November 24, 2009 guilty finding was substantially motivated by Plaintiff's July 2007 complaint two years earlier against CDCR officers, none of whom were Lieutenant Jimenez. No proximity in time has been demonstrated. Plaintiff has also failed to show causation in light of the undisputed evidence that non-party Officer Landeros found the battery in a cell shared by both Plaintiff and Rideau after a random search. Lieutenant Jimenez was neither involved in the random cell search, nor involved in the discovery of the battery that led to an issuance of the rules violation report. Plaintiff has not submitted evidence sufficient to meet elements two and five, namely that retaliation for the filing of Plaintiff's July 2007 complaint – not the discovery of

contraband in Plaintiff's shared cell - was a substantial motivating factor that caused Lieutenant Jimenez to find Plaintiff guilty of a prison rules violation.  Accordingly, **IT IS RECOMMENDED** that the Court **GRANT** Defendant Jimenez' motion for summary judgment on Plaintiff's First Amendment claim.

### b.  <u>Fourteenth Amendment Due Process</u>

As the Court explained in Section B(4) above, under the Constitution's Fourteenth Amendment, no state shall deprive any person of life, liberty, or property without due process of law. Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Although a prisoner in a prison disciplinary hearing is not entitled to the full array of due process rights that a defendant possesses in a criminal prosecution, he is entitled to some protections including: the right to call witnesses, to present documentary evidence, and to have a written statement by the fact finder as to the evidence relied upon along with the reasons for the disciplinary action taken. <u>Id</u>.

When a prison disciplinary proceeding may result in the loss of credits, which happened in this case, due process requires the prisoner to receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985); <u>Wolff</u>, 418 U.S. at 563–567. In addition, due process requires that the decision be supported by "some evidence." <u>Hill</u>, 472 U.S. at 455, citing <u>U.S. ex rel. Vatauer v. Commissioner of Immigration</u>, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927).

As the records attached to both parties' motions show, Plaintiff was given all the rights and procedural safeguards of a rule violation hearing when Lieutenant Jimenez found him guilty of possession of contraband.  Specifically, Plaintiff received the rules violation report documents more than twenty-four hours before the hearing. Plaintiff was

present in person for the November 24, 2009 hearing, read the rules violation report aloud at the hearing and stated that he understood it.  Plaintiff gave a statement in his defense and also presented and questioned inmate Rideau as his witness.  After the hearing had concluded, Lieutenant Jimenez added his findings to the report.

Finally, there was some evidence introduced at the hearing to support Jimenez' finding despite testimony that Plaintiff had no knowledge of the contraband cell phone battery.  Specifically, Jimenez also considered the written statements of Officer Landeros, who wrote the rules violation report against Plaintiff, conducted the search, found the contraband and determined the battery belonged to Plaintiff. **IT IS THEREFORE RECOMMENDED** that the Court **GRANT** Jimenez' motion for summary judgment on Plaintiff's Fourteenth Amendment claim.

### D.   Qualified Immunity

Defendants argue they are entitled to qualified immunity.  The Court, however, has found that no violation of Plaintiff's First, Eighth or Fourteenth Amendment rights occurred.  As a result, the Court need not reach any issues regarding qualified immunity.  See County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998) ("The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all."); see also Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

### E.   Unserved Defendants

Summary judgment may be entered in favor of unserved defendants where: (1) the controlling issues would be the same as to the unserved defendants; (2) those issues have been briefed; and (3) the plaintiff has been provided an opportunity to address the controlling issues. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802–03 (9th Cir.), cert. denied, 516 U.S. 864, 116 S.Ct. 178, 133 L.Ed.2d 117 (1995) (citing, inter alia, Silverton v. Department of the Treasury, 644 F.2d 1341, 1345 (9th

1   Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981)).

2     In this case, the controlling issues for unserved Defendant Nurse S. Garcia, who is

3   alleged to have made a sling for Plaintiff's arm after his fall on September 5, 2009, yet

4   did not recommend a lower bunk [ECF No. 43 at pp. 32-33] and Defendant S. Ramos,

5   who is alleged to have forced Plaintiff to use an upper bunk despite his injured shoulder

6   and ankle are the same as those for Nurse Molina and Office Hughey respectively.  These

7   issues have been fully briefed in the cross-motions for summary judgment and discussed

8   in the instant Report and Recommendation.  In sum, the Court recommended a finding

9   that there are no material issues of fact remaining as to Plaintiffs' First Amendment

10  retaliation or Eighth Amendment deliberate indifference claims because Defendants have

11  presented evidence that inmates with medical accommodation chronos have lower bunk

12  preference; Plaintiff did not have a medical accommodation chrono for a lower bunk on

13  September 5, 2009; medical accommodation chronos are only issued by medical doctors

14  and neither the nurses, nor officers identified by Plaintiff were able to issue, modify or

15  disregard medical accommodation chronos.  For the same reasons explained in detail

16  herein, it is also **RECOMMENDED** that the Court find unserved Defendants S. Garcia

17  and S. Ramos are also entitled to summary judgment as to the claims against them.

18    On August 24, 2016, Plaintiff filed a response to the cross-motions for summary

19  judgment seeking leave of Court to amend his Second Amended Complaint because he

20  believes he has discovered the new name of the unserved defendant S. Ramos to now be

21  V. Sojo.  [ECF No. 60. ]  <u>Federal Rule of Civil Procedure 15(a)</u> provides that a party may

22  amend its complaint once "as a matter of course" before a responsive pleading is served,

23  or at any time within twenty days of service if it requires no response.  "Otherwise a party

24  may amend the party's pleading only by leave of court or by written consent of the

25  adverse party; and leave shall be freely given when justice so requires."  <u>Fed. R. Civ. P.

26  15 (a).</u>  This Court notes that on several occasions, "the Supreme Court has instructed the

27  lower federal courts to heed carefully the command of Rule 15(a), F[ed]. R. Civ. P., by

28  freely granting leave to amend when justice so requires." <u>DCD Programs, LTD. v.</u>

Leighton, 833 F.2d 183, 186 (9th Cir. 1995) (quoting Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir. 1986)) (quoting Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973)) (citations omitted).  "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) (citing Rosenberg Brothers & Co. v. Arnold, 283 F.2d 406 (9th Cir. 1960) (per curiam)).  Liberality in granting leave to amend pleadings is not dependent on whether amendment will add causes of action or parties; however, "it is subject to qualification that amendment not cause opposing party undue prejudice, is not sought in bad faith, and does not constitute an exercise in futility." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1981).  In Foman v. Davis, 371 U.S. 178 (1962), the United States Supreme Court held that leave to amend pleadings should be freely given in the absence of any apparent or declared reasons.  The Court enunciated multiple factors a district court should consider when deciding whether to grant leave to amend, including: [U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. Id. at 182.  Here, the Foman factors of futility of amendment and undue prejudice to Defendants weigh against granting Plaintiff leave to amend.  Accordingly, the Court **RECOMMENDS** Plaintiff's request for leave to amend the Second Amended Complaint to change the name of S. Ramos to V. Sojo and thereafter serve officer Sojo be **DENIED** for futility because it has been recommended herein that the Court find neither the nurses, nor officers violated Plaintiff's constitutional rights under the First or Eighth Amendment.  The existence of undue prejudice also supports this recommendation for denial of leave to amend because discovery is now closed in this case and Defendants would be prejudiced by the year-long length of the delay (the Second Amended Complaint was filed on March 20, 2015) and the advanced stage of this case.

///

///

## V.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge John A. Houston under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For the reasons outlined above, **IT IS RECOMMENDED** that the Court **GRANT** Defendant's motion for summary judgment and **DENY** Plaintiff's motion for summary judgment. **IT IS FURTHER RECOMMENDED** that the Court DEBY Plaintiff's motion for leave to amend.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties **no later than September 20, 2016.**  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties **no later than September 27, 2016.**  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  September 6, 2016

Hon. Bernard G. Skomal
United States Magistrate Judge